UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

G&F GRAPHIC SERVICES, INC.,  :    Civil No. 13-6482 (JEI/AMD)
                         :
      Plaintiff,    :
                         :           **OPINION**
      v.           :
                         :
GRAPHIC INNOVATORS, INC.;    :
and SCOTT KILEY,         :
                         :
      Defendants.   :

**APPEARANCES:**

PEPPER HAMILTON
By:  Jonathan Preziosi, Esq.
     William Gibson, Esq.
301 Carnegie Center
Princeton, New Jersey 08543
          Counsel for Plaintiff

REED SMITH LLP
By:  Daniel Mateo, Esq.
     Amy McVeigh, Esq.
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
          Counsel for Defendants

**IRENAS,** Senior United States District Judge:

Plaintiff G & F Graphic Services, Inc., doing business as Inserts East, contracted to purchase from Defendant Graphic Innovators, Inc. ("GI"), a "remanufactured" commercial Harris N400B printing press for $2.7 million.  Inserts East asserts that the printing press has never worked correctly, and that Graphic

Innovators fraudulently sold it an older, historically problematic N400 model, rather than the N400B model specified in the parties' contract of sale.[1]

Presently before the Court is Defendants' Partial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons stated herein, the Motion will be denied.

## I.

The Complaint alleges the following facts.

Plaintiff Inserts East is a New Jersey corporation with its principal place of business in Pennsauken, New Jersey. It specializes in "produc[ing] circulars and other printed materials for a wide variety of customers, including leading supermarkets, arts and craft retailers, clothing retailers, and sporting goods stores." (Compl. ¶ 1)

In 2012, Inserts East, seeking to expand its business, began its search for a printing press that could "print commercially acceptable printed products at a rate of at least 35,000 impressions per hour." (Compl. ¶ 11) In late 2012, Defendant GI told Inserts East that it had a "Harris N400B" press "that it was prepared to remanufacture . .

---

[1]  The Court exercises diversity of citizenship subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff is a New Jersey citizen and Defendants are Illinois citizens, and the amount in controversy exceeds the statutory minimum.

. to meet Inserts East's needs."  (Id. ¶ 12)[2]  "During its

negotiations with GI, Inserts East asked GI and [its President,

Defendant Scott] Kiley to confirm that the model GI was offering to

sell was indeed a N400B press.  Kiley confirmed and represented

unequivocally that the GI Press was a N400B."  (Id. ¶ 14)[3]

    In December, 2012, Inserts East and GI executed the contract for

the sale and installation of a remanufactured Harris N400B press.

(Compl. Ex. A)  Particularly relevant to the instant motion, the

contract contains a warranty that the press would be free from

defects for a period of 12 months after completion of installation,

and a damages limitation clause that excludes recovery of

consequential damages in a dispute arising out of the sale.

    In April, 2013, GI began installation of the press in Inserts

East's Pennsauken facility.  The press "was operating by late June

2013, [but] it has never run reliably or at acceptable [] speeds to

produce a commercially acceptable product."  (Compl. ¶ 24)  "For

example, if the press runs at speeds in excess of 24,000 impressions

per hour, it vibrates excessively and 'loses register,' which means

that the image is misaligned on the page.  Such a product . . . is

not commercially acceptable."  (Id. ¶ 24)

---

[2]  "A re-manufactured press is one that, though used, has been
returned to a 'like new' condition and should be as reliable as a new
press."  (Compl. ¶ 10)

[3]  "The Harris N400 Press has historically been considered a problem
press."  (Compl. ¶ 13)  The N400B Press resulted from manufacturer
modifications which sought to address the problems with the N400
Press.  (Id.)

Inspection of the press has also revealed other problems, such as damaged cylinder bearings, and the absence of certain upgrades that GI represented it would make.  (Compl. ¶ 26)  "Inserts East has allowed GI to spend weeks . . . attempting to cure the[] defects . . . but those efforts have proven futile."  (Id. ¶ 29)

Inserts East believes that GI intentionally sold it a remanufactured N400 press, rather than an N400B press.  It bases its belief on the alleged facts that: (1) when Inserts East tried to replace a damaged cylinder, "a stock N400B would not fit" in the press; and (2) "many of the [press's] component parts had their serial numbers removed prior to the delivery of the [press] to Inserts East."  (Compl. ¶¶ 33-34)

The Complaint asserts seven counts: (1) breach of express warranty; (2) rejection or revocation of acceptance; (3) breach of contract; (4) unjust enrichment; (5) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.; (6) common law fraud; and (7) a claim for a declaration that the damage limitation clause in the contract of sale "is unconscionable and unenforceable in that it was procured by means of the fraudulent conduct of [Defendants] GI and Kiley."  (Compl. ¶ 92)  Defendant Kiley is only a Defendant to the statutory and common law fraud claims (Counts 5 and 6);  all other counts (i.e., the contract and quasi-contract claims) are asserted only against Defendant GI.

Defendants presently move to dismiss Counts 4 through 7 only.

4

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).  While a court must accept as true all factual allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.

The contract provides that it "will be construed in accordance with and governed by the laws of the State of New Jersey." (Compl. Ex. A, p. 13)  Moreover, the parties assume that New Jersey law

applies to all of the claims presently at issue.  (See Defs' Moving Brief, p. 10)  Thus, the Court applies New Jersey law.

Each disputed Count is addressed in turn.


### A.

Defendants argue that Inserts East's unjust enrichment claim is "duplicative" because it seeks "relief . . . identical to the relief available in [the] rejection/revocation of acceptance claim." (Moving Brief, p. 12)  But even assuming *arguendo* that Defendants' statement is correct, it is not a basis for dismissal under Fed. R. Civ. P. 12(b)(6).

As Defendants themselves state in their brief, "'*recovery* based on a quasi-contract theory is mutually exclusive of a *recovery* based on a contract theory.'"  (Moving Brief, p. 11, quoting *Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802, 814 (D.N.J. 2000)) This is a correct statement of the law; if Inserts East prevails, it will not be able to obtain double recovery.[4]  But at the pleadings stage, nothing prohibits Inserts East from pleading alternate, and even legally inconsistent, theories.  Indeed, the Federal Rules of Civil Procedure expressly allow such pleading.  *See* Fed. R. Civ. P. 8(d)(2)-(3).

Defendants' Motion to Dismiss Count 4 will be denied.

---

[4]   *Duffy* decided a motion for summary judgment, not a motion to dismiss.  123 F. Supp. 2d at 814-15.

**B.**

Next, Defendant Kiley argues that the statutory and common law fraud claims asserted against him in his individual capacity fail to state a claim.  The Court disagrees.

**1.**

The New Jersey Supreme Court has held, "an individual who commits an affirmative act or knowing omission that the [Consumer Fraud Act] has made actionable can be liable individually" under the CFA.  *Allen v. V and A Brothers, Inc.*, 208 N.J. 114, 131 (2011). Liability will be imposed on an individual when that "specific individual has engaged in conduct prohibited by the CFA."  *Id.* at 132; *see also id.* at 133 ("nothing in the CFA or the relevant precedents suggests that . . . the individual employee or officer will be shielded from liability for *the CFA violation he or she has committed*.") (emphasis added).

Kiley argues that Inserts East has not pled any facts supporting a conclusion that he specifically made any misrepresentation or omission.  The Court disagrees.  The Complaint alleges, "[d]uring its negotiations with GI, Inserts East asked GI and Kiley to confirm that the model GI was offering to sell was indeed a N400B press.  Kiley confirmed and represented unequivocally that the GI Press was a N400B," (Compl. ¶ 14), yet the press allegedly was not an N400B

model.  (Compl. ¶ 33)[5]  Thus, the Complaint alleges that Kiley himself made a material misrepresentation to Inserts East, which is a violation of the CFA.  *See* N.J.S.A. 56:8-2 ("The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, [or] misrepresentation . . . in connection with the sale . . . of any merchandise . . . is declared to be an unlawful practice.").

Kiley's Motion to Dismiss Count 5 will be denied.

### 2.

As to the common law fraud claim, Kiley argues that under *Saltiel v. GSI Consultants,* 170 N.J. 297 (2002), he cannot be liable in tort under a participation theory of liability because Inserts East cannot establish that his company, GI, owed a duty of care to Inserts East.  *See Saltiel,* 170 N.J. at 303 ("A predicate to [personal] liability is a finding that the corporation owed a duty of care to the victim, the duty was delegated to the officer and the officer breached the duty of care by his own conduct.").

Kiley's argument misses the mark because the tortious conduct alleged here is intentional fraud, whereas the tort alleged in *Saltiel* was negligence.  *See* 170 N.J. at 299, 302, 306.  The concepts of a duty of care, and breach of that duty, are negligence concepts that typically have no place in the intentional tort analysis.  *See*

---

[5]  Kiley also signed the contract which states that the press is a N400B press.  (Compl. Ex. A)

Restatement (Second) of Torts § 4 cmt. b ("The word 'duty' is used most frequently in that part of the Restatement . . . which deals with the subject of negligence. . . . 'Duty' is rarely used in dealing with the invasions of legally protected interests by acts which are intended to invade them."). Stated another way, every person has a "duty" to refrain from committing intentional torts. *Blystra v. Fiber Tech Group, Inc.*, 407 F. Supp. 2d 636, 647 (D.N.J. 2005).

*Saltiel*, rather than supporting Kiley's argument for dismissal, directly undercuts it. In *Saltiel*, the New Jersey Supreme Court reaffirmed the legal "basis for holding corporate officers personally liable" for their intentional tortious conduct, such as "fraud and conversion":

> 'It is well settled by the great weight of authority in this country that the officers of a corporation are personally liable to one whose money or property has been misappropriated or converted by them to the uses of the corporation, although they derived no personal benefit therefrom and acted merely as agents of the corporation. The underlying reason for this rule is that an officer should not be permitted to escape the consequences of his individual wrongdoing by saying that he acted on behalf of a corporation in which he was interested.'

170 N.J. at 304 (quoting *Hirsch v. Phily*, 4 N.J. 408, 416 (1950)).

As already discussed above, Inserts East asserts that Kiley, himself, made a material misrepresentation of fact concerning the press GI sold. Thus, the Complaint sufficiently alleges that Kiley participated in GI's alleged fraud. *Saltiel,* as applied to this case, merely stands for the proposition that Kiley cannot escape

liability by asserting that he gained no direct personal benefit from the alleged fraud.

Kiley's Motion to Dismiss Count 6 will be denied.


## C.

Defendants also assert that the fraud claims against it are barred by the economic loss doctrine.

As discussed at length in *Saltiel*, the economic loss doctrine helps to maintain the "critical" "distinctions between tort and contract actions."  170 N.J. at 310, 314.  Essentially, the economic loss doctrine functions to eliminate recovery on "a contract claim in tort claim clothing." *SRC Constr. Corp. v. Atl. City Hous. Auth.*, 935 F. Supp. 2d 796, 801 (D.N.J. 2013).

Thus, if through its tort claim, a plaintiff "'simply seeks to enhance the benefit of the bargain [it] contracted for,'" *Id.* at 798 (quoting *Saltiel*), the economic loss doctrine applies.  If, however, a plaintiff asserts that a defendant breached a "duty owed to the plaintiff that is independent of the duties that arose under the contract," *Saltiel*, 170 N.J. at 317, the economic loss doctrine does not apply.

The parties discuss this issue without distinguishing between the statutory CFA claim (Count 5) and the common law fraud claim

(Count 6).[6]  The Court's analysis, however, is different with respect to the two claims, and therefore the claims are separately addressed.

### 1.

With respect to the CFA claim against GI, the Court agrees with Judge Walls' analysis in *Florian Greenhouse v. Cardinal IG Corp.*:

> The state legislature intended persons who committed fraudulent commercial practices in connection with the sale of merchandise to be liable for treble damages. To hold that this statutory claim is subsumed by plaintiff's breach of contract cause of action would be contrary to legislative intent and would preclude consumer fraud claims in far too many circumstances.

11 F. Supp. 2d 521, 528 (D.N.J. 1998); *see also Lithuanian Commerce Corp. v. Sara Lee Hosiery,* 219 F. Supp. 2d 600, 608 (D.N.J. 2002) ("To [apply the economic loss doctrine to plaintiffs' CFA claim] would foreclose plaintiffs from seeking special tort remedies specifically allowed by the New Jersey legislature.") (following

---

[6]  The parties also do not distinguish between the claims asserted against Defendant GI and the claims asserted against Defendant Kiley. However, the distinction is dispositive of the issue as to Defendant Kiley. The undersigned has previously held that "the [economic loss] doctrine only applies to bar certain tort claims between parties to a contract." *SRC Constr. Corp. v. Atl. City Hous. Auth.*, 935 F. Supp. 2d 796, 799 (D.N.J. 2013); *cf. Sullivan v. Pulte Home Corp.*, 232 Ariz. 344, 346 (2013) ("We decline to extend [Arizona's economic loss] doctrine to non-contracting parties."); *Indem. Ins. Co. v. Am. Aviation, Inc.*, 891 So. 2d 532 (Fla. 2004) (answering in the negative the certified question of "whether the economic loss doctrine of Florida applies if there is no contractual relationship between the plaintiffs and defendant"), *abrogated on other grounds by Tiara Condo. Ass'n v. Marsh & McLennan Cos.,* 110 So. 3d 399 (Fla. 2013). There is no contract between Inserts East and Defendant Kiley, therefore the economic loss doctrine does not apply.
     Alternatively, even if the economic doctrine does apply to the fraud claims against Defendant Kiley, those claims survive for the same reasons the fraud claims against GI survive.

*Florian*); *see generally Barton v. RCI, LLC*, 2011 U.S. Dist. LEXIS 80134 at *18-19 (D.N.J. July 22, 2011) (holding that the economic loss doctrine does not bar CFA claim); *In re Wellnx Mktg. & Sales Practices Litig.*, 673 F. Supp. 2d 43, 53 (D. Mass. 2009) (holding that New Jersey's economic loss doctrine does not bar New Jersey CFA claim); *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 73690 at *88-90 (D.N.J. 2008) (holding that the economic loss doctrine does not bar CFA claim and stating, "the UCC expressly preserves a buyer's right to maintain an action in fraud."); *cf. Marrone v. Greer & Polman Const., Inc.,* 405 N.J. Super. 288 (App. Div. 2009) (holding that "plaintiffs' claims based on the Products Liability Act (PLA), N.J.S.A. 2A:58C-1 to -11, were properly dismissed under the economic loss doctrine," and separately holding that "plaintiffs' claims under the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -184, were properly dismissed for lack of proof that any losses they suffered were the result of defendants' alleged unconscionable conduct."); *see generally Alloway v. General Marine Industries*, 149 N.J. 620, 640-41 (1997) (suggesting in dicta that claims for violation of the CFA and the Truth-In-Consumer Contract, Warranty and Notice Act could be pursued along with a breach of warranty claim under the U.C.C.).[7]

---

[7]   *But see, Werwinski v. Ford Motor Co.,* 286 F.3d 661 (2002) (holding that Pennsylvania's economic loss doctrine barred plaintiffs' claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law); *but see, Toth v. Northwest Sav. Bank*, 2013 Pa. Dist. & Cnty. Dec. LEXIS 176 at *8-10 (Pa. County Ct. 2013) ("*Werwinski* never addressed the issue of why a court-created doctrine can trump

Moreover, this result is consistent with the New Jersey Supreme Court's discussion of the economic loss doctrine in *Saltiel.* The CFA imposes on GI (and all sellers of merchandise) a duty to be fair and honest in consumer transactions which is "independent of the duties that arose under the contract," 170 N.J. at 317. Therefore, the economic loss doctrine does not preclude Inserts East's CFA claim. *See also Golf v. Henderson,* 376 Ill. App. 3d 271 (Ill. App. Ct. 1st Dist. 2007) (holding that Illinois' Consumer Fraud Act imposes

---

legislation."); *Seward v. Certo,* 2006 U.S. Dist. LEXIS 4038 at *4 (E.D. Pa. Feb. 2, 2006) ("Pennsylvania courts . . . have expressly disagreed with *Werwinski's* holding and refused to apply the economic loss doctrine to UTPCPL claims."); *Grispino v. New Eng. Mut. Life Ins. Co. (In re New Eng. Mut. Life Ins. Co. Sales Practices Litig.)*, 2003 U.S. Dist. LEXIS 25664 at *30-34 (D. Mass. May 20, 2003) (expressly declining to follow *Werwinski;* holding that Pennsylvania's economic loss doctrine did not bar plaintiffs' claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law); *O'Keefe v. Mercedes-Benz United States, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003) (expressly declining to follow *Werwinski;* holding that Pennsylvania's economic loss doctrine did not bar plaintiffs' claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law)(Van Antwerpen, D.J.); *Oppenheimer v. York Int'l Corp.*, 2002 Phila. Ct. Com. Pl. LEXIS 12 at *13-16 (Pa. C.P. 2002) ("This court has . . . announced a number of decisions which, cumulatively, lead to a holding contrary to that of the Third Circuit on the role of the economic loss doctrine with respect to UTP/CPL claims.").

*Cf. Ulbrich v. Groth,* 310 Conn. 375, 411-12 (2013) ("we conclude that the economic loss doctrine does not bar [Connecticut Unfair Trade Practices Act] claims arising from a breach of contract, including a breach of a contract for the sale of goods covered by the UCC, when the plaintiff has alleged that the breach was accompanied by intentional, reckless, unethical or unscrupulous conduct."); *A & R Fugleberg Farms, Inc. v. Triangle Ag, LLC*, 2010 U.S. Dist. LEXIS 34325 at *15-17 (D.N.D. 2010) (holding that North Dakota's economic loss doctrine did not bar North Dakota Consumer Fraud Act claim) (citing *Florian*); *compare TSYS Acquiring Solutions, LLC v. Elec. Payment Sys., LLC*, 2010 U.S. Dist. LEXIS 104259 at *8-9 (D. Ariz. Sept. 29, 2010) (holding that Arizona Consumer Fraud Protection Act claim was not barred by Arizona's economic loss doctrine because the claim "sound[ed] in contract," not tort).

"extracontractual duties" and therefore Illinois' economic loss

doctrine did not bar the statutory claim).

GI's Motion to Dismiss on this ground will be denied.


## 2.

With respect to the common law fraud claim against GI, the

parties do not dispute that the New Jersey Supreme Court would likely

recognize a fraud in the inducement exception to the economic loss

doctrine.[8]  But the parties' briefs reveal conflicting interpretations

of the nature and scope of that exception.  Such disagreement is

understandable given the conceptual struggles reflected in New Jersey

decisions,[9] and decisions throughout the country.[10]  Thankfully, in

---

[8]   *See Alloway,* 149 N.J. at 639 ("In addition to the right to recover
under the U.C.C., victims of fraud or unconscionable conduct possess
substantial rights to recover for common-law fraud or for various
violations of state and federal statutes.").  The fraud in the
inducement exception is recognized in a majority of states.  *See
generally* Anzivino, *The Fraud in the Inducement Exception to the
Economic Loss Doctrine*, 90 Marq. L. Rev. 921 (Summer 2007).

[9]   *See generally Montclair State Univ. v. Oracle USA, Inc.,* 2012 U.S.
Dist. LEXIS 119509, 17-18 (D.N.J. Aug. 23, 2012) ("In the past
twenty-two years, the New Jersey Supreme Court has still not
expressed its view on what precise sort of fraud claims may proceed
alongside breach of contract claims, despite the development within
the District of New Jersey courts of the 'extraneous to the contract'
doctrine relating to fraudulent inducement claims.  Nor have any
appellate court decisions spoken directly to this development.  In my
view, District Courts would greatly benefit from the guidance of the
New Jersey Supreme Court in this regard and it is hoped that the New
Jersey Supreme Court will take the opportunity to clarify this area
of law when the issue is next presented to the Court.")(discussing
*Gleason v. Norwest Mortgage, Inc.*, 243 F.3d 130, 144 (3d Cir.
2001)(describing the fraud in the inducement exception to the
economic loss doctrine in New Jersey as "very complex and
troublesome.")).

this case, the Court need not parse the differing articulations of the fraud in the inducement exception.  Even under the exception's most narrow articulation, Inserts East's common law fraud claim survives.

Judge Orlofsky wrote in *Lithuanian Commerce Corp. v. Sara Lee Hosiery*,

> District Courts in this Circuit have interpreted [the relevant caselaw] as requiring the conclusion that where the fraud alleged is contained within the four corners of the contract, that is, where it concerns the nonfulfillment of a warranty or a guarantee contained in the contract, the plaintiff is prohibited from pursuing a separate tort claim; but, where the fraud is extrinsic to the contract, that is, where it more closely resembles a 'fraud in the inducement' claim, then the plaintiff is not prohibited from pursuing simultaneous tort and contract claims.  The *Florian* Court also indicated that it is relevant to inquire whether the parties expressly limited the remedies for breach in the contract.  If they had, allowing the plaintiff to pursue a tort remedy would contravene the intentions of the parties.

219 F. Supp. 2d 600, 607 (D.N.J. 2002) (internal citations omitted).

An examination of the parties' contract reveals that no warranty applies to Inserts East's claim that it was sold the wrong model

---

[10]  *See generally* Anzivino, *The Fraud in the Inducement Exception to the Economic Loss Doctrine*, 90 Marq. L. Rev. 921, 931-43 (Summer 2007); Dobbs, SYMPOSIUM: DAN B. DOBBS CONFERENCE ON ECONOMIC TORT LAW: *An Introduction to Non-Statutory Economic Loss Claims*, 48 Ariz. L. Rev. 713, 728-33 (Winter, 2006); Tourek, Boyd, and Schoenwetter, *Bucking the "Trend": The Uniform Commercial Code, the Economic Loss Doctrine, and Common Law Causes of Action for Fraud and Misrepresentation*, 84 Iowa L. Rev. 875 (August, 1999).

press[11], and that the parties did not limit their remedies for the type of claim asserted here-- an intentional tort.

The warranties are found in two places: in the "Warranty" section of the Harris N400B Proposal (attached to the contract and expressly incorporated therein); and Paragraph (g) of the contract itself.  These clauses state, in relevant part,

> Graphic Innovators warranties remanufactured equipment for 12 months and workmanship 12 months from the startup of the press.  The manufacturer's warranty for all new equipment will pass through to the buyer.  Buyer must keep a detailed log documenting the press has been lubricated according to original manufacturer's specifications.  Failure to do so can void the warranty.  Additionally, 'consumable parts' such as but not limited to, rubber rollers, timing belts, folder belting and knives, dryer flame rods, filters, rotary unions, glue pumps, brake pads, ink actuators, [and] felt seals are not part of the warranty items.  Used electronic components not replaced are covered for 30 days beyond the date of the first live.
>
> . . . .
>
> THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE WARRANTIES EXPRESSLY DESCRIBED IN SELLER'S PURCHASE ORDER OR WRITTEN QUOTATION OR THIS SECTION (G).  Seller warrants that the Equipment will be free from defects in material or workmanship for a period of 12 months from Completion.  If the Equipment fails to perform due to a defect in materials or workmanship during this period, Seller will repair or, at Seller's option, replace the Equipment, or defective portion thereof, with the same or

---

[11]  Inserts East's breach of warranty claim is based on different alleged facts, namely, GI's alleged failure to deliver a press that was: (1) free from defects, and (2) "assembled with the quality and type of components specified" in the contract.  (Compl. ¶¶ 42, 44, 45)  Admittedly, the Complaint does plead that "[u]nder the Harris N400B [contract], GI expressly warranted that the Press would be a Harris N400B."  (Compl. ¶ 43)  However, this allegation is directly contradicted by the contract itself, which is attached as Exhibit A to the Complaint.  Therefore, the Court is not required to presume the allegation is true.

comparable item at no charge to Buyer for parts or labor. Seller further warrants good title to the Equipment and that same be transferred to Buyer free and clear of any interest or claim of any third party.

**THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

Buyer's exclusive remedy for breach of any warranty shall be repair or replacement, at Seller's option . . .

Under no circumstances shall Seller be liable to Buyer or any other person for any labor charges, special collateral, incidental or consequential damages whether based on breach of warranty or contract or negligence. . . .

(Compl. Ex. A) (caps and bold in original).

The above-quoted warranties demonstrate that: (1) while some warranties were provided-- for example, that the press will be free from defects for a certain period of time-- a warranty that the press was an N400B model was not among them; and (2) all other warranties, express and implied, were clearly, broadly, and unequivocally disclaimed.  Thus, no warranty claim duplicates, or overlaps with, Inserts East's common law fraud claim; or, in the words of *Lithuanian Commerce,* the fraud alleged is not "contained within the four corners of the contract."  219 F. Supp. 2d at 607.

Similarly, while the contract limits damages recoverable for particular claims-- "breach of warranty, or contract or negligence" claims-- intentional torts are not included in the list, thus supporting a conclusion that allowing Inserts East to pursue its

17

common law fraud claim will not "contravene the intentions of the parties." *Lithuanian Commerce,* 219 F. Supp. 2d at 607.

Alternatively, Judge Cooper in *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,* articulated an arguably broader fraud in the inducement exception:

> The distinction between fraud in the inducement and fraud in the performance of a contract remains relevant to the application of the economic loss doctrine in New Jersey. Courts have continued to affirm the conceptual distinction between a misrepresentation of a statement of intent at the time of contracting, which then induces detrimental reliance on the part of the promisee, and the subsequent failure of the promisor to do what he has promised. No decision has formally negated the distinction between fraudulent inducement extraneous to the contract and fraud in its subsequent performance.
>
> New Jersey federal and state decisions that have permitted a fraud claim to proceed with a breach of contract claim generally appear to have involved a fraud in the inducement of a contract or an analogous situation based on pre-contractual misrepresentations.
>
> Further, in our most recent statement recognizing the fraud-in-the-inducement and fraud-in-the-performance distinction, this District Court stated again that the critical issue with regard to economic loss is whether the allegedly tortious conduct is extraneous to the contract.

226 F. Supp. 2d 557, 563-64 (D.N.J. 2002) (internal citations and quotations omitted).

Under this standard, too, Inserts East's common law fraud claim survives. Inserts East alleges "pre-contractual misrepresentations." *Bracco*, 226 F. Supp. 2d at 564. The Complaint specifically alleges, "*[d]uring its negotiations with GI*, Inserts East asked GI and Kiley to confirm that the model GI was offering to sell was indeed, a N400B

press.  Kiley confirmed and represented unequivocally that the GI
Press was a N400B."  (Compl. ¶ 14) (emphasis added)  Moreover, the
alleged facts support an inference that Inserts East would not have
contracted to purchase an N400 press given its knowledge of the
historical problems with that model (Compl. ¶ 13), thereby supporting
a conclusion that the alleged misrepresentation induced Inserts East
to enter into the contract with GI.  Such representations are
necessarily "extraneous to the contract," *id.* at 564, because they
took place prior to the execution of the contract, and, as explained
*supra*, no warranty in the contract guarantees that the press being
sold is an N400B model.

Accordingly, the Court holds that the fraud in the inducement
exception to the economic loss doctrine applies to Inserts East's
common law fraud claim.  GI's Motion to Dismiss on this ground will
be denied.


### D.

Defendants also argue that the CFA and common law fraud claims
are not adequately pled under the standards set forth in Fed. R. Civ.
P. 8 and 9(b), *Twombly,* and *Iqbal*.  Defendants argue that the
Complaint fails to identify who made what fraudulent
misrepresentations, and that Inserts East "has not alleged any intent
on the part of GI and Kiley in connection with" the alleged
fraudulent conduct.  (Moving Brief, p. 25)  The Court disagrees.

At the risk of excessive repetition, the Complaint asserts that Defendant Kiley, acting on behalf of Defendant GI, specifically represented that GI was selling Inserts East an N400B press, when the press was not an N400B.  This specific allegation, and the other surrounding factual allegations that place it in context, are sufficiently particularized to pass muster under federal pleading standards.

Further, the alleged fact that "many of the component parts [of the press] had their serial numbers removed prior to the delivery of the GI Press to Inserts East" (Compl. ¶ 34) supports a plausible inference of fraudulent intent.  *Compare* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge and other conditions of a person's mind may be alleged generally.").

The Court holds that the CFA and common law fraud claims are adequately pled.  Defendants' Motion to Dismiss on this ground will be denied.


**E.**

Lastly, Defendants argue that Inserts East has not stated a claim for declaring the damages limitation clause unenforceable.

The parties agree on the applicable legal standard:

> New Jersey Law does not require the invalidation of an exclusion of consequential damages when limited contractual remedies fail of their essential purpose. It is only when the circumstances of the transaction, including the seller's breach, cause the consequential damage exclusion to be inconsistent with the intent and reasonable commercial expectations of the parties that

invalidation   of   the   exclusionary   clause   would   be
appropriate . . . .

*Carter v. Exxon Co. USA*, 177 F.3d 197, 208 (3d Cir. 1999) (internal

citations and quotations omitted).  "In determining whether a

contract is unconscionable, courts focus on the bargaining power of

the parties, the conspicuousness of the putative unfair term, and the

oppressiveness and unreasonableness of the term."  *Id.* at 207.

The unconscionability inquiry is fact-intensive and therefore

more appropriately explored at summary judgment, as Inserts East

suggests.  At the pleadings stage, Inserts East's plausible

allegations of fraud in the inducement of the contract are sufficient

to open the door to discovery.  Defendants' alleged deception, if

proven, would fundamentally alter the balance of bargaining power

between the parties and would weigh in favor of unenforceability.

Defendants' Motion to Dismiss Count 7 will be denied.


**IV.**

In light of the foregoing, Defendants' Motion to Dismiss will be

denied.  An appropriate Order accompanies this Opinion.


Date:  May 8, 2014                    ___s/ Joseph E. Irenas___
                                      JOSEPH E. IRENAS, S.U.S.D.J.